*EXECUTION VERSION*

**THIS FORBEARANCE AGREEMENT** (this "Agreement"), effective as of January 11, 2017, is made by and among Justice Aviation, LLC, a West Virginia limited liability company ("Borrower"), James C. Justice, II ("Guarantor"), James C. Justice Companies, Inc. ("Justice Companies;" Borrower, Guarantor, and Justice Companies are hereinafter referred to, collectively, as the "Forbearance Parties" and, individually, each as a "Forbearance Party") and Citizens Asset Finance, Inc. f/k/a RBS Asset Finance, Inc. ("Lender").

## RECITALS:

A.  Reference is hereby made to: (i) that certain Loan and Aircraft Security Agreement (S/N 22102) dated as of December 30, 2009, by and between Borrower and Lender (as amended, supplemented or otherwise modified from time to time, the "Loan Agreement"); (ii) that certain Promissory Note dated as of December 30, 2009 by Borrower in favor of Lender in the original principal amount of $6,600,000.00 (as amended, supplemented or otherwise modified from time to time, the "Note"); (iii) that certain Guaranty dated as of December 30, 2009 by Guarantor in favor of Lender (as amended, supplemented or otherwise modified from time to time, the "Guaranty"); (iv) that certain Consent to Aircraft Lease and Assignment dated as of December 30, 2009, by and among, Borrower, Lender, and Justice Companies (as amended, supplemented or otherwise modified from time to time, the "Lease Assignment"); and (v) all other related documents (collectively, as amended, modified, supplemented, renewed, extended and/or restated from time to time, the "Other Documents," and collectively with the Loan Agreement, the Note, the Guaranty, and the Lease Assignment, the "Loan Documents"). All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

B.  Pursuant to the Loan Documents, Lender made certain loans and other extensions of credit available to Borrower, and to secure such loans, extensions of credit and the other obligations under the Loan Documents (collectively referred to herein as the "Obligations"), Borrower granted to Lender first priority liens on and security interests in the Collateral (as defined in the Loan Documents).

C.  The total amount of the Obligations to Lender through January 4, 2017 is $4,283,631.73 (which amount includes, without limitation, the outstanding principal balance, accrued interest, the Forbearance Fee referenced in Section 5(b) below, estimated attorneys' fees, and other costs and expenses incurred by or on behalf of Lender), plus all accruing interest and fees, and all accruing costs and expenses incurred by or on behalf of Lender in connection with the Loan Documents and all other Obligations.

D.  Certain Events of Default have occurred and are continuing under the Loan Documents as of the date hereof as described on Exhibit A attached hereto (referred to herein as the "Current Defaults"), and each Forbearance Party acknowledges that it has been duly and properly notified of such Current Defaults.

E.     As a result of the Current Defaults, Lender has the immediate right to exercise any and all rights, powers and remedies available against the Forbearance Parties under the Loan Documents, and all additional rights, powers and remedies, at law, in equity or by statute.

F.     Each Forbearance Party has requested that Lender forbear in the exercise and enforcement of its rights, powers and remedies under the Loan Documents with respect to the Current Defaults, and Lender is willing to forbear from the exercise and enforcement of such rights and remedies for a limited time only upon the Forbearance Party's full and complete compliance with and fulfillment of the terms and conditions set forth herein and under the Loan Documents in the manner hereinafter stated, provided that the rights and remedies of Lender are not otherwise waived or impaired.

**NOW, THEREFORE,** in consideration of the foregoing and the agreements, promises and covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     **RECITALS**.  The recitals to this Agreement are incorporated herein as a part of this Agreement.

2.     **DEFINITIONS**.  The following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

(a)     "Bankruptcy Code" means Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq*.).

(b)     "Forbearance Event of Default" shall have the meaning set forth in Section 7.

(c)     "Forbearance Period" means the period commencing on the date hereof and ending on the earliest to occur of (A) the date of the termination of this Agreement by Lender pursuant to Section 8 hereof, or (B) the Forbearance Termination Date.

(d)     "Forbearance Termination Date" means May 31, 2017.

(e)     "Proceeding" means any voluntary or involuntary proceeding commenced by or against the Forbearance Party under any provision of the Bankruptcy Code, or under any other bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with its creditors, or proceedings seeking dissolution, receivership, reorganization, arrangement, or other similar relief.

(f)     "Section" means a numbered section of this Agreement, unless another document is specifically referenced.

3. **ACKNOWLEDGMENT AND AGREEMENT.** Each Forbearance Party hereby acknowledges, reaffirms, represents, warrants and covenants that:

(a) The Current Defaults have occurred and are continuing, and Lender has not, as of the date of this Agreement, expressly or impliedly waived the Current Defaults;

(b) The Recitals are true and correct;

(c) Each Forbearance Party hereby waives any requirement in the Loan Documents that Lender provide written notice of any Event of Default, and the Forbearance Party acknowledges that Lender has not, as of the date of execution of this Agreement, otherwise expressly or impliedly waived any of the Current Defaults;

(d) Lender possesses valid, properly perfected, fully enforceable security interests in and liens on all of the Collateral described in the Loan Documents, which such liens are paramount in priority and interest to all other liens and security interests, if any, of any other parties relating to the Collateral except as expressly stated in the Loan Documents;

(e) The Loan Documents constitute legal, valid and binding obligations enforceable by Lender against each Forbearance Party in accordance with their respective terms subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar law affecting creditors' rights generally.  Each Forbearance Party hereby reaffirms its obligations under the Loan Documents (as may be amended by this Agreement) including, without limitation, the Obligations.  Each Forbearance Party also agrees that it shall not dispute the validity or enforceability of this Agreement, the Loan Documents or any of its obligations under such agreements in any judicial, administrative or other proceeding, either during or following the termination or expiration of the Forbearance Period;

(f) Subject to the provisions of <u>Section 4</u> hereof and the terms of the Loan Documents, by virtue of the Current Defaults, Lender has the right to immediately enforce its right to payment of all Obligations and exercise all of its rights, powers, and remedies under the Loan Documents, including without limitation, to enforce its right to payment of the Obligations and its security interest in, and liens on, the Collateral;

(g) Nothing contained in this Agreement shall, at any time, require Lender to make loans or other extensions of credit to Borrower or to permit overdrafts in any account maintained by or on behalf of Borrower; and any such obligations of Lender shall be governed only by, and shall remain subject only to, the terms of the Loan Documents except to the extent expressly limited herein;

(h) No Forbearance Party intends to file a petition for relief under any Chapter of the Bankruptcy Code or to initiate any other Proceeding, and Lender relied to its detriment on such representation.

**4.     LIMITED FORBEARANCE AND FURTHER CONSIDERATION.**

(a)     During the Forbearance Period, so long as no Forbearance Event of Default (as defined in Section 7 hereof) shall have occurred and be continuing and subject to compliance by each Forbearance Party with the terms and conditions of this Agreement and the Loan Documents, Lender hereby agrees to forbear from exercising and enforcing its rights, powers and remedies afforded under the Loan Documents or at law, in equity or by statute, with respect to the Current Defaults during the Forbearance Period.

(b)     The limited forbearance set forth in this Agreement shall not be construed to waive or otherwise impair the ability of Lender to charge such additional fees or interest, including without limitation, interest at the Default Rate, or to otherwise enforce any other rights, powers or remedies, without further notice, in each case in accordance with the Loan Documents, (i) after the Forbearance Period regardless of whether or not such enforcement relates to actions taken or payments received during the Forbearance Period, or (ii) upon a Forbearance Event of Default.

(c)     The forbearance of Lender provided herein shall immediately cease without notice at the end of the Forbearance Period, and each Forbearance Party at that time shall be obligated to make immediate payment of all outstanding Obligations under this Agreement.

(d)     Each Forbearance Party agrees that any breach of this Agreement by any Forbearance Party or any Forbearance Event of Default will also constitute an Event of Default under the Loan Documents and that any Event of Default (other than the Current Defaults) under the Loan Documents shall constitute a Forbearance Event of Default hereunder.  Each Forbearance Party further agrees that the occurrence of any Event of Default (other than the Current Defaults) or Forbearance Event of Default shall constitute cause for the termination by Lender of this Agreement pursuant to Section 8 hereof.

(e)     The forbearance of Lender hereunder is further expressly subject to and conditioned upon each Forbearance Party's strict compliance with each and every term and provision of this Agreement, and except with respect to the Current Defaults, each Forbearance Party's strict compliance with each and every term and provision of the Loan Documents.

(f)     Upon the breach by any Forbearance Party of any provision of this Agreement, or a Forbearance Event of Default hereunder or an Event of Default under the Loan Documents (other than the Current Defaults), Lender, at its option, may terminate this Agreement in the manner provided in Section 8 hereof, upon which time all Obligations shall be immediately due and payable, and Lender shall have the undisputed and absolute right to exercise and enforce all other rights, powers and remedies that may exist pursuant to the Loan Documents or at law, in equity or by statute, all without further demand or notice of any kind, all of which are hereby waived by each Forbearance Party.

CHICAGO/#2932998.5

(g)     Each Forbearance Party acknowledges and agrees that Lender shall be under no obligation to extend the Forbearance Termination Date and that the failure of Lender to enforce any or all of its remedies under this Agreement, the Loan Documents, or under law or at equity after the expiration of the current Forbearance Period will not give rise to a further extension of the Forbearance Period absent a written agreement executed by Lender to extend the Forbearance Termination Date.

(h)     Each Forbearance Party further acknowledges and agrees that the decision of Lender to allow the Forbearance Parties to use the Collateral during the Forbearance Period is of great value to each Forbearance Party, and that such forbearance is, independent of the other consideration received by each Forbearance Party hereunder, sufficient consideration for each and every one of the Forbearance Parties' obligations under this Agreement.

**5.     CONDITIONS.**  In addition to the other provisions set forth in this Agreement and in the Loan Documents, Lender's forbearance is expressly subject to and conditioned upon the continual compliance by the Forbearance Parties with the following terms, conditions and provisions, which shall be deemed to be amendments to and part of the Loan Documents:

(a)     During the Forbearance Period, each Forbearance Party shall continue to perform and comply with each term, condition and provision of this Agreement and the Loan Documents, and no Forbearance Event of Default, Event of Default or other breach or default shall have occurred and be continuing under this Agreement or any of the Loan Documents, except the Current Defaults;

(b)     In order to induce Lender to enter into this Agreement providing for a forbearance through the Forbearance Termination Date, the Forbearance Parties hereby agree to pay to Lender a forbearance fee in the amount of $50,000.00 (the "Forbearance Fee"), which fee is fully earned the date hereof, and payable at the Closing. In the event the Obligations are paid in full on or prior to May 31, 2017, Lender shall refund or credit $30,000 of the Forbearance Fee to Borrower;

(c)     During the Forbearance Period, interest on any and all unpaid principal of or interest on any Loan or any fee or other amount payable by the Forbearance Parties under the Loan Documents shall accrue at the contract rate under the Note; provided, however, that in the event of a Forbearance Event of Default, Lender may, at its sole discretion, reinstate interest at the Default Rate;

(d)     On or before January 31, 2017, Borrower shall provide Lender with evidence, in form and substance acceptable to Lender, of adequate insurance coverage on the Aircraft;

(e)     On or before January 31, 2017, Borrower shall retain a broker (the "Broker") acceptable to Lender to sell the Aircraft. Borrower shall grant Lender full and immediate access to the Broker and authorize and direct the Broker to cooperate with Lender and its agents;

(f) On or before January 31, 2017, Borrower shall provide Lender with written confirmation that the Aircraft is prepared and ready for sale, including without limitation, written confirmation that (i) all required maintenance and inspections have been completed and fully paid, (ii) any and all mechanic's and/or servicemen liens have been fully paid and released; and (iii) any and all service providers have been fully paid;

(g) On or before April 15, 2017, Borrower shall provide Lender with a fully executed aircraft purchase agreement, in form and substance acceptable to both Lender and Borrower, which provides for the sale of the Aircraft (the "Sale") at a purchase price and with terms acceptable to both Lender and Borrower, and with a closing (the "Closing") by no later than May 1, 2017 (the "Closing Date");

(h) The Closing shall occur on or before the Closing Date, and at the Closing, all net proceeds from the Sale shall be paid directly to Lender by wire transfer of immediately available funds pursuant to the instructions attached hereto as Exhibit B. In the event there are any excess proceeds from the Sale after the Obligations are paid in full, Lender shall return any such excess proceeds to Borrower within five (5) business days;

(i) Borrower shall continue to make monthly payments under the Loan Documents to Lender, each in the amount set forth in the Note, with a final installment due on May 15, 2017, at which time all Obligations, including without limitation, all outstanding principal, interest, fees and expenses, including without limitation, fees and expenses in connection with Lender's appraisal of the Aircraft, shall be due and payable in full;

(j) On or before January 31, 2017, Borrower shall provide Lender with updated financial information required under the Loan Documents, all in form and substance satisfactory in all respects to Lender, including without limitation, (i) a copy of all updated financial reports and information required by Section 4.1(b) of the Loan Agreement, including without limitation, (x) Borrower's consolidated balance sheet for calendar years 2013, 2014, and 2015, (y) Borrower's statements of income, retained earnings and changes in financial position for calendar years 2013, 2014, and 2015, and (z) all other financial information requested by Lender, and (ii) in accordance with Section 4.1(f) of the Loan Agreement, a report specifying the number of flight hours on the Aircraft at the beginning and end of each calendar year beginning with calendar year 2012 and including all subsequent calendar years;

(k) On or before January 31, 2017, Guarantor shall provide Lender with updated financial information required under the Guaranty, all in form and substance satisfactory in all respects to Lender, including without limitation, (i) a copy of Guarantor's account statement(s) evidencing Guarantor's compliance with the liquidity covenant under Section 5(f) of the Guaranty, (ii) a net worth statement evidencing Guarantor's compliance with the minimum net worth requirement under Section 5(g) of the Guaranty, and (iii) a copy of all updated financial reports required under Section 5(h) of the Guaranty, including without limitation, (x) Guarantor's most recent personal

financial statement, (y) true and accurate signed copies of Guarantor's most recently filed federal income tax returns, including all schedules thereto, and (z) all other financial information requested by Lender;

(l)     The Forbearance Parties shall pay on demand all expenses incurred by or on behalf of Lender, including without limitation, reasonable legal fees and expenses incurred by Lender in connection with the preparation, drafting, negotiation and enforcement of this Agreement; and

(m)     All of the warranties and representations of the Forbearance Parties contained herein shall be true and correct in all material respects.

6.     **REPRESENTATIONS AND WARRANTIES.**  Each Forbearance Party's representations and warranties contained in this Agreement shall survive the execution, delivery and acceptance of this Agreement by Lender.  Each Forbearance Party represents and warrants to Lender that:

(a)     The execution and delivery of this Agreement and the performance by the Forbearance Party of its obligations hereunder is within the Forbearance Party's organizational powers and authority, has been duly authorized by all necessary organizational action and does not and will not contravene or conflict with the organizational documents or material contracts of such Forbearance Party.  This Agreement has been duly executed and delivered by the Forbearance Party and constitutes the legal, valid and binding obligations of such Forbearance Party, enforceable against such Forbearance Party in accordance with its terms subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar law affecting creditors' rights generally;

(b)     No Event of Default, or defaults which, except for the passage of time or notice would constitute an Event of Default, exists under the Loan Documents other than the Current Defaults as of the date of this Agreement; and

(c)     The Forbearance Party has read and understands the contents of this Agreement and has had an opportunity to review and consider the terms of this Agreement with counsel of its choice.

7.     **FORBEARANCE EVENTS OF DEFAULT.**  A "Forbearance Event of Default" shall mean the occurrence of any one or more of the following events:

(a)     Any Forbearance Party shall (i) fail to observe or perform any term, covenant, condition, or agreement contained in this Agreement, or any agreement, instrument or document executed in connection herewith to which such Forbearance Party is a party, or (ii) breach any representation or warranty contained in this Agreement, or any agreement, instrument or document executed in connection herewith to which such Forbearance Party is a party, including, without limitation, any condition contained in Section 5 of this Agreement;

7

(b) An Event of Default or a Default, shall have occurred and be continuing under the Loan Documents, other than the Current Defaults;

(c) Any creditor or other party (i) commences to exercise any remedies against any Collateral, including, without limitation, for possession, disposition, foreclosure, public or private sale, replevin, garnishment, attachment, or seizure, or sends any notice to or otherwise seeks to obtain payment directly from any account debtor of any Forbearance Party or (ii) takes any action that would constitute a material adverse change in the business or operations of any Forbearance Party;

(d) Any Forbearance Party makes a payment or transfer to or for the benefit of any creditor that is subordinate to Lender;

(e) Any Forbearance Party files a petition for relief under any Chapter of the Bankruptcy Code or an order for relief under the Bankruptcy Code is entered against any Forbearance Party or an involuntary petition under the Bankruptcy Code against any Forbearance Party is not dismissed within 90 days of the filing thereof;

(f) A material adverse change in the business, properties, prospects, condition (financial or otherwise), assets or results of operation of any Forbearance Party shall have occurred since the effective date hereof; or

(g) Any instrument, document, report, schedule, agreement, representation or warranty, oral or written, made or delivered to Lender by the Forbearance Party under or in connection with this Agreement is untrue or incorrect in any material respect when made or delivered.

8. **TERMINATION.** Upon the occurrence of any Forbearance Event of Default, Lender may immediately terminate this Agreement and declare all of the Obligations immediately due and payable. Upon the occurrence of any Forbearance Event of Default, Lender shall be entitled to exercise all of its rights, powers, and remedies under this Agreement, the Loan Documents and applicable law. Each Forbearance Party hereby consents (i) to the *ex parte* appointment of a receiver by Lender in any action initiated by Lender pursuant to this Agreement, and such Forbearance Party waives any requirements for notice or posting of a bond in connection therewith; and (ii) to the *ex parte* filing by Lender on behalf on such Forbearance Party of an assignment for the benefit of creditors in accordance with applicable law, and such Forbearance Party waives any requirements for notice or posting of a bond in connection therewith. Each Forbearance Party acknowledges that it shall have no claim for damages or otherwise against Lender with respect to any such termination of the Forbearance Period.

9. **RESERVATION OF RIGHTS.** The forbearance set forth herein shall be limited precisely as written and, except as expressly set forth herein, neither the fact of Lender's forbearance nor any other term or provisions herein shall, or shall be deemed or construed to (i) be a consent to any forbearance, waiver, amendment or modification of any term, provision or condition of the Loan Documents, (ii) affect, impair, operate as a waiver of, or prejudice any right, power or remedy which Lender may now or hereafter

have pursuant to the Loan Documents or any other document, agreement, security agreement or instrument executed in connection with or related to the Loan Documents, or at law or in equity or by statute including, without limitation, with regard to any existing or hereafter arising Event of Default or Forbearance Event of Default, (iii) impose upon Lender any obligation, express or implied, to consent to any amendment or further modification of the Loan Documents, or (iv) be a consent to any waiver of any existing Event of Default (including, without limitation, the Current Defaults), all such Events of Default remaining outstanding.  Lender hereby expressly reserves all rights, powers and remedies specifically given to them under the Loan Documents or now or hereafter existing at law, in equity or by statute.

10.     **RELEASES; INDEMNITIES.**

(a)     In further consideration of Lender's execution of this Agreement, each Forbearance Party, individually and on behalf of such Forbearance Party's successors (including, without limitation, any trustees acting on behalf of such Forbearance Party and any debtor-in-possession with respect to such Forbearance Party), assigns, subsidiaries and affiliates (collectively, the "Releasors"), hereby forever releases Lender and its successors, assigns, parents, subsidiaries, affiliates, officers, employees, directors, agents and attorneys (collectively, the "Releasees") from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of actions (whether at law or in equity) and obligations of every nature whatsoever, whether liquidated or unliquidated, whether known or unknown, matured or unmatured, fixed or contingent (collectively, "Claims") that Releasors may have against the Releasees which arise from or relate to any actions which the Releasees may have taken or omitted to take prior to the date this Agreement was executed including, without limitation, with respect to the Obligations, any Collateral, the Loan Documents, or any third parties liable in whole or in part for the Obligations.  This provision shall survive and continue in full force and effect whether or not (i) any Forbearance Party shall satisfy all other provisions of this Agreement or the Loan Documents, including payment in full of all Obligations, (ii) this Agreement otherwise is terminated, or (iii) the forbearance of Lender ceases pursuant to this Agreement.

(b)     The Releasors hereby agree to indemnify and hold the Releasees harmless with respect to any and all liabilities, claims, obligations, losses, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by the Releasees, or any of them, whether direct, indirect or consequential, as a result of or arising from or relating to any proceeding, whether threatened or initiated, asserting any claim for legal or equitable remedy under any statutes, regulations or common law principles arising from or in connection with the negotiation, preparation, execution, delivery, performance, administration and enforcement of the Loan Documents, this Agreement or any other document executed in connection herewith.  The foregoing indemnity shall survive the payment in full of the Obligations and the termination of this Agreement and the Loan Documents.

11.     **ACKNOWLEDGMENT OF VALIDITY AND ENFORCEABILITY OF LOAN DOCUMENTS.**  Each Forbearance Party expressly acknowledges and

agrees that the Loan Documents to which such Forbearance Party is a party constitutes legal, valid and binding obligations enforceable in accordance with their terms by Lender against such Forbearance Party, and each Forbearance Party expressly reaffirms its obligations under the Loan Documents (as amended by this Agreement), including, without limitation, the Obligations.  Each Forbearance Party further expressly acknowledges and agrees that Lender has a valid, duly perfected, fully enforceable security interest in and lien on the Collateral.  Each Forbearance Party agrees that it shall not dispute the validity or enforceability of this Agreement, the Loan Documents or any of its obligations hereunder or thereunder, or the validity, priority, enforceability or extent of Lender's security interest in or lien on the Collateral in any judicial, administrative or other proceeding, either during or following the termination or expiration of the Forbearance Period.

        12.    **AMENDMENTS.**  No amendment or modification of any provision of this Agreement shall be effective without the written agreement of Lender, and no termination or waiver of any provision of this Agreement, or consent to any departure by any Forbearance Party from such provisions, shall in any event be effective without the written concurrence of Lender.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

        13.    **NO WAIVER.**  Lender's failure at any time to require strict performance by any Forbearance Party of any provision or term of the Loan Documents or this Agreement shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith.  Any suspension or waiver by Lender of a Forbearance Event of Default or any Event of Default shall not, except as may be expressly set forth herein, suspend, waive or affect any other Forbearance Event of Default or any Event of Default, whether the same is prior or subsequent thereto and whether of the same or of a different kind or character.  None of the undertakings, agreements, warranties, covenants and representations of any Forbearance Party contained in this Agreement or the Loan Documents, and no Forbearance Event of Default or Event of Default, shall be deemed to have been suspended or waived by Lender unless such suspension or waiver is (a) in writing and signed by Lender, and (b) delivered to the Forbearance Parties.

        14.    **SUCCESSORS AND ASSIGNS.**  This Agreement shall be binding upon Lender and its successors and assigns, and shall be binding on each Forbearance Party and its respective successors and permitted assigns.

        15.    **LIMITATION ON RELATIONSHIP BETWEEN PARTIES.**  The relationship of Lender, on the one hand, and the Forbearance Parties, on the other hand, has been and shall continue to be, at all times, that of creditors and debtors and not as joint venturers or partners.  Nothing contained in this Agreement, any instrument, document or agreement delivered in connection herewith or in the Loan Documents shall be deemed or construed to create a fiduciary relationship between or among the parties.

        16.    **NO ASSIGNMENT.**  This Agreement shall not be assignable by any Forbearance Party without the written consent of Lender.  Lender may freely assign to

one or more Persons all or any part of, or any participation interest in, its rights and benefits hereunder.

17. **SECTION TITLES.**  The Section titles contained in this Agreement are included for the sake of convenience only, shall be without substantive meaning or content of any kind whatsoever, and are not a part of the agreement among the parties.

18. **INCORPORATION OF LOAN AGREEMENT PROVISIONS.**  The provisions regarding governing law and jury waiver as set forth in the Loan Agreement are incorporated herein by reference to the same extent as if reproduced herein in their entirety.

19. **NOTICES.**  Except as otherwise provided herein, all notices, requests and demands to or upon a party hereto to be effective shall be in writing and shall be sent to the addresses and by the means specified in the Loan Documents.  Copies of any such notices, requests and demands given by the Forbearance Parties shall also be given to counsel for Lender, Vedder Price P.C., 222 North LaSalle Street, Chicago, Illinois 60601, Attn:  Douglas J. Lipke, Esq.  Copies of any such notices, requests and demands given by Lender shall also be given to in-house counsel for Borrower, Dustin M. Deane, 302 South Jefferson Street, Suite 600, Roanoke, Virginia 24011, dustin.deane@bluestoneindustries.com.

20. **EXECUTION IN COUNTERPARTS/FACSIMILE.**  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile and .pdf signatures shall be binding on the parties.

21. **INTEGRATION.**  This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written negotiations, agreements and understandings of the parties with respect to the subject matter hereof; provided, however, that except as expressly modified herein the Loan Documents shall remain in full force and effect in accordance with their respective terms and conditions.

22. **TIME OF ESSENCE.**  Time is of the essence in this Agreement and the Loan Documents.

\* \* \* \* \*

[SIGNATURE PAGES FOLLOW]

CHICAGO/#2932998.5

*(Signature Page to Forbearance Agreement)*

**FORBEARANCE PARTY:**

JUSTICE AVIATION, LLC

By: _[signature]_
Name: Stephen W. Ball
Title: Secretary

JAMES C. JUSTICE COMPANIES

By: _[signature]_
Name: Stephen W. Ball
Title: Secretary

JAMES C. JUSTICE, II

Signed: _[signature]_

**LENDER:**

CITIZENS ASSET FINANCE, INC. F/K/A RBS CITIZENS FINANCE, INC.

By: _____
Name: _____
Title: _____

*(Signature Page to Forbearance Agreement)*

**FORBEARANCE PARTY:**          **JUSTICE AVIATION, LLC**

By: _____
Name: _____
Title: _____

**JAMES C. JUSTICE COMPANIES**

By: _____
Name: _____
Title: _____

**JAMES C. JUSTICE, II**

Signed: _____

**LENDER:**          **CITIZENS ASSET FINANCE, INC. F/K/A RBS CITIZENS FINANCE, INC.**

By: _____[signature]_____
Name: __John F. Kendrick__
Title: __Officer__

12

## EXHIBIT A

## <u>CURRENT DEFAULTS (AS OF JANUARY 11, 2017)</u>

      A.      Failure to deliver to Lender a copy of Borrower's consolidated balance sheet for calendar years 2013, 2014, and 2015, as required by Section 4.1(b) of the Loan Agreement;

      B.      Failure to deliver to Lender a copy of Borrower's statements of income, retained earnings and changes in financial position for calendar years 2013, 2014, and 2015, as required by Section 4.1(b) of the Loan Agreement;

      C.      Failure to provide Lender evidence that Borrower has maintained a minimum net income of at least $1.00 (which shall be tested annually), as required by Section 4.1(d) of the Loan Agreement;

      A.      Failure to provide Lender evidence that the number of flight hours on the Aircraft was not operated in excess of 500 hours annually, as required by Section 4.1(f) of the Loan Agreement;

      B.      Failure to furnish Lender with an insurance certificate in form and substance satisfactory to Lender evidencing that Borrower has obtained the insurance coverages required under the Loan Agreement, as required by Section 4.6(d) of the Loan Agreement;

      C.      Failure to deliver to Lender a copy of Guarantor's account statement(s) evidencing Guarantor's compliance with the liquidity covenant for calendar years 2013, 2014, and 2015, as required by Section 5(f) of the Guaranty;

      D.      Failure to provide Lender evidence that Guarantor has remained in compliance with the minimum net worth covenant for calendar years 2013, 2014, and 2015, as required by Section 5(g) of the Guaranty;

      E.      Failure to deliver to Lender a copy of Guarantor's personal financial statement for calendar years 2013, 2014, and 2015, as required by Section 5(h)(i) of the Guaranty; and

      F.      Failure to deliver to Lender a true and accurate signed copy of Guarantor's federal income tax returns, including all schedules thereto, for calendar years 2013, 2014, and 2015, as required by Section 5(h)(ii) of the Guaranty.

## EXHIBIT B

ACCOUNT NAME: CITIZENS ASSET FINANCE CUSTOMER PAYMENTS

ACCOUNT NUMBER: 450000-149-1

ROUTING NUMBER: 241070417

BANK: CITIZENS BANK, N.A., ONE CITIZENS DRIVE, RIVERSIDE, RI 02915.

SPECIAL INSTRUCTIONS: PLEASE REFERENCE COMPANY NAME & INVOICE NUMBER

CHICAGO/#2932998.5