UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITIZENS ASSET FINANCE, INC.,

        Plaintiff,

-against-

JUSTICE AVIATION, LLC, JAMES C. JUSTICE, II and JAMES C. JUSTICE COMPANIES, INC.,

        Defendants.

Case No. 1:17-cv-07115

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

VEDDER PRICE P.C.

Daniel C. Green
dgreen@vedderprice.com
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

Douglas J. Lipke
    (admitted *pro hac vice*)
William W. Thorsness
    (admitted *pro hac vice*)
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Plaintiff
Citizens Asset Finance, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

BRIEF SUMMARY OF RELEVANT FACTS AND THE COUNTERCLAIM .......................... 3

ARGUMENT ............................................................................................................................. 6

POINT ONE  BORROWER HAS FAILED TO STATE A CLAIM FOR BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING .......... 7

    A.    Borrower Cannot State a Claim for Breach of the Implied Covenant of
Good Faith and Fair Dealing by Adding Terms Not Included in the
Contract .................................................................................................................... 8

    B.    Borrower Was Not Denied Any "Fruits" of the Contract ....................................... 9

POINT TWO  BORROWER'S COUNTERCLAIM IS BARRED UNDER THE
DOCTRINE OF WAIVER ................................................................................ 10

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................................6

*Barn–Chestnut, Inc. v. CFM Dev. Corp.,*
    193 W.Va. 565 (1995) ..............................................................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007) ..................................................................................................................6

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187 (2d Cir. 2005) ......................................................................................................8

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.,*
    17 N.Y.3d 269 (2011) .............................................................................................................11

*Coca-Cola N. Am. v. Crawley Juice, Inc.,*
    No. 09-CV-3259, 2011 WL 1882845 (E.D.N.Y. May 17, 2011) ..............................................8

*Huntington Nat'l Bank v. Hard Rock Expl., Inc.,*
    No. 16-CV-48, 2017 WL 2129306 (N.D. W.Va. May 16, 2017) ..............................................7

*In Touch Concepts, Inc. v. Cellco P'ship,*
    949 F. Supp. 2d 447 (S.D.N.Y 2013) ........................................................................................8

*Interpharm, Inc. v. Wells Fargo Bank,*
    655 F.3d 136 (2d Cir. 2011) ................................................................................................7, 10

*Ray Legal Consulting Grp. v. Dijoseph,*
    37 F. Supp. 3d 704 (S.D.N.Y. 2014) .....................................................................................9, 10

*Sands Brothers & Co., Ltd. v. Hyseq,*
    No. 96-CV-3469, 1997 WL 626547 (S.D.N.Y. Oct. 7, 1997) ..............................................6, 10

*Sun Forest Corp. v. Shvili,*
    152 F. Supp. 2d 367 (S.D.N.Y. 2001) .......................................................................................7

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,*
    487 F.3d 89 (2d Cir. 2007) ........................................................................................................9

**Statutes**

New York General Obligations Law §5-1401 .................................................................................7

TABLE OF AUTHORITIES
(continued)

Page(s)

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................................3

Fed. R. Civ. P. 11 ..............................................................................................................................3

Fed. R. Civ. P. 12(b)(6) ................................................................................................................1, 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITIZENS ASSET FINANCE, INC.,

        Plaintiff,

-against-

JUSTICE AVIATION, LLC, JAMES C. JUSTICE, II and JAMES C. JUSTICE COMPANIES, INC.,

        Defendants.

Case No. 1:17-cv-07115

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

Plaintiff Citizens Asset Finance, Inc. ("Lender") submits this memorandum of law in support of its motion (the "Motion") pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaim in this matter (the "Counterclaim") because Defendant/Counterclaimant Justice Aviation, LLC ("Borrower") has failed to state a claim upon which relief may be granted.

**PRELIMINARY STATEMENT**

Prior to filing the Complaint, the Lender provided Defendants with a myriad of extensions and opportunities to cure their defaults, including over nine months after the Loan Agreement matured, as well as three months after the Forbearance Agreement terminated.[1] However, Defendants' continued delays, defaults and outright refusal to participate in discussions to address the deficiency—all the while continuing to use the Aircraft in operations—finally exhausted the Lender's patience. In the end, the Lender should not have

---

[1] Capitalized terms used and not otherwise defined herein shall have the same meaning ascribed to such terms in the Complaint.

been forced to file this suit. The Defendants cannot plead poverty. Rather, the Defendants (and certainly the Guarantor) have the means to immediately make good upon their obligations.[2]

Following the recent sale of the Aircraft, this is now a straightforward collection case. And one that is likely to be resolved in summary fashion, given that this matter does not involve a single material disputed fact. Indeed, pursuant to the parties' Forbearance Agreement, each of the Defendants acknowledged that the Loan Documents constitute legal, valid and binding obligations, and reaffirmed the total amount owed to Lender. Each of the Defendants also therein waived all defenses against (and released) the Lender.

In their haste to stave off the inevitable judgment, Defendants filed the defective and insupportable Answer of All Defendants [the "Answer"] and the Counterclaim [of] Justice Aviation LLC. Despite the benefit of seven weeks to craft a response, the Answer consists of just seven substantive paragraphs—and not a single affirmative defense. Review of that Answer confirms how little care Defendants took in preparing it. For example, they assert that they are "without sufficient knowledge to form a belief" as to: (1) where they do business; (2) whether they executed the Loan Documents; (3) whether there are defaults; (4) whether they were notified of defaults; (5) the use of the Aircraft they admit was leased by one of the Defendants; and (5) the authenticity or enforceability of any of the Loan Documents, despite the fact that they countersigned each of those documents. (Answer ¶¶ 2, 4, 5 & 7.) Moreover, the Counterclaim is predicated upon the existence and enforceability of those same documents and, thus, explicitly

---

[2] The Guarantor is the Governor of West Virginia and, by public account, a billionaire. *See* https://www.forbes.com/billionaires.

contradicts the Answer. Although this Motion is not directed at the Answer, the same violates the letter and spirit of Fed. R. Civ. P. 8 and illustrates the intent behind Fed. R. Civ. P. 11.[3]

As for the Counterclaim, which flippantly asserts a violation of the implied duty of good faith and fair dealing based on the suggestion that the Lender was obligated to immediately consent to a sale of the Aircraft, it is defective as a matter of law and fact.[4] As detailed below, the Counterclaim is an improper attempt to shoehorn implied duties into the Loan Documents that contradict the express terms of these documents. Moreover, Borrower previously waived its right to bring the Counterclaim. Accordingly, Borrower cannot state a claim upon which relief may be granted, and the Counterclaim should be dismissed. And, because Borrower will be unable to state a claim under any set of facts, the dismissal should be with prejudice.

## BRIEF SUMMARY OF RELEVANT FACTS AND THE COUNTERCLAIM

Lender and Borrower previously entered into the Loan Agreement, pursuant to which Lender made certain loans and other extensions of credit available to Borrower for the purchase of the Aircraft. (Complaint, ¶ 10, Ex. A.) Notably, the Loan Agreement expressly prohibited

---

[3] Fed. R. Civ. P. 11 states that an attorney's signature on pleading "certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(a)-(b). If a pleading is signed in violation of this rule, the court may sanction a party or its counsel. *Id.* 11(c). Defendants and their counsel should thus never have filed the Answer and the Counterclaim in their current form. While Fed. R. Civ. P. 11 was drafted for remedying this exact situation, Lender will not immediately press sanctions. Lender is content with a summary granting of its Motion.

[4] While the Lender appreciates that this submission is not the occasion to dispute factual assertions, context is important. The Counterclaim is flat wrong to imply that the Lender somehow obstructed the Borrower's ability to sell the Aircraft. In fact, following the Initial Defaults, the Lender was entirely supportive of a sale, which was a principal condition upon which the Lender agreed to enter into the Forbearance Agreement. But all parties knew that any sale could not come close to covering the full amount owed to the Lender. The Defendants steadfastly refused to engage in any meaningful discussions regarding this deficiency, which was always of paramount concern to the Lender.

Borrower from selling or otherwise transferring or relinquishing possession of or disposing of the Aircraft except as expressly provided therein. (Complaint, Ex. A § 4.4.)

Borrower defaulted under the Loan Documents by, among other things, failing to perform certain obligations and covenants required thereunder. (*Id.* ¶ 14.) Prior to maturity, Lender notified Borrower and the Guarantor of these defaults, demanded that they cure the defaults, and reminded these Defendants of Lender's rights and remedies under the Loan Documents. (*Id.* ¶ 14.) Notwithstanding these Initial Defaults, the Lender agreed to enter into the Forbearance Agreement with each of the Defendants. (*Id.* ¶ 15, Ex. E.)

Defendants acknowledged and admitted therein the existence of the Initial Defaults and their liability to Lender under the Loan Documents. (*Id.* ¶ 1, Ex. E ¶¶ C, D.) Defendants further admitted that these Obligations then totaled at least $4,283,631.73. (*Id.*) Moreover, Defendants acknowledged that the Loan Documents constitute legal, valid and binding obligations enforceable by Lender in accordance with their respective terms against Defendants, and they also reaffirmed their respective obligations thereunder and waived any defenses thereto. (*Id.* ¶ 17, Ex. E ¶¶ 3, 11.) In addition, Defendants agreed that they would not contest or dispute Lender's security interests in the Aircraft in any manner. (*Id.* ¶ 18, Ex. E ¶¶ 3(e), 11.) Defendants also acknowledged broad releases and indemnification obligations to Lender from all Claims related to, among other things, the Loan Documents and/or the Forbearance Agreement, either during or following the termination or expiration of the Forbearance Period. (*Id.*) Finally (and critically), Defendants admitted that Lender retained the entitlement to exercise all other rights, powers and remedies provided to Lender under the Loan Documents and/or at law, in equity and/or by statute. (*Id.* ¶ 19, Ex. E ¶¶ E, 3(a), (f), 9, 13.)

The Forbearance Period expired on May 31, 2017. (*Id.* ¶ 21.) Thereafter, Lender again notified Borrower of the continuing existence of the Initial Defaults (and additional defaults, including for nonpayment) and requested payment and cure. (*Id.*) Defendants failed to do so. Prior to filing the Complaint, the Lender afforded Defendants one final opportunity to resolve the matter short of litigation, by letter dated September 6, 2017. (*Id.*, Ex. F.) Defendants again failed to cure the defaults or provide payments to Lender. This suit followed.

Defendants filed their Answer on November 10, 2017. The Answer included Borrower's purported Counterclaim for an alleged breach of the implied covenant of good faith and fair dealing (Counterclaim ¶ 10.)

According to its Counterclaim, Borrower "advised" Lender of an offer from a prospective buyer to purchase the Aircraft for $2.2 million on July 6, 2017. (Counterclaim ¶ 13.) Borrower asserts that because Lender did not instantaneously agree to such a sale and, instead, gave its consent to the sale six days later (on July 12, 2017), Lender acted unreasonably. (Counterclaim ¶¶ 14-22.) Borrower then suggests that, because the Aircraft was ultimately sold for $2.1 million—$100,000 less than the first offer—the six day delay to consent amounts to a breach of the implied covenant of good faith and fair dealing. (Counterclaim ¶¶ 19, 22.)

Notably, Borrower does not cite to the Loan Agreement (or any other Loan Document) in support of its Counterclaim. This makes sense, because there is absolutely no contractual term that imposes a duty on Lender to consent to a proposed sale within a specific period of time—let alone in an expedited manner. Borrower, though, acknowledges the existence of a valid, enforceable contract and further acknowledges that its efforts to secure a buyer in September 2017 were made with the goal of using the proceeds from a sale to pay its obligations to the Lender. (Counterclaim ¶¶ 9-11.)

Consequently, the Borrower cannot now inject a non-existent, contradictory term imposing an expedited consent deadline into the Loan Documents. Indeed, Lender was under no contractual obligation to facilitate a sale of the Aircraft at all but rather was willing to consider such a sale solely as an accommodation to Borrower (with the hopes of mitigating its damages). Any offending delays were caused by Defendants' refusal to engage in discussions regarding the deficiency. Moreover, and in all events, Borrower expressly waived its Counterclaim under the Loan Agreement and the Forbearance Agreement. As such, the Counterclaim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

On a motion to dismiss, the Court evaluates whether a complaint (or counterclaim) contains sufficient factual matter, if accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions couched as factual allegations must be disregarded. *See id.* at 678-79. A plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007). A plaintiff's "bare averment that he wants relief and is entitled to it" is not enough. *Twombly*, 550 U.S. at 556 n.3 (citation and internal quotations omitted). Instead, the allegations of the complaint must "plausibly suggest[] . . . that the pleader is entitled to relief." *Id.* at 557. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*, at 555. Borrower has utterly failed to do so with respect to its Counterclaim here.

Moreover, where "documentary evidence that is vital to any of the allegations made in the complaint" conflicts with those allegations, "the relevant terms of the attached document are controlling." *Sands Brothers & Co., Ltd. v. Hyseq*, No. 96-CV-3469, 1997 WL 626547, at *3 (S.D.N.Y. Oct. 7, 1997). Thus, if the pleader's allegations contradict the document itself, the

provisions of the document control the Court's interpretation. *Id.*; *see also Interpharm, Inc. v. Wells Fargo Bank*, 655 F.3d 136, 143 (2d Cir. 2011) (affirming dismissal where, as here, forbearance agreement contradicted allegations).

The Loan Agreement provides that it is to be construed in accordance with the laws of the state of New York. (Complaint, Ex. A ¶ 8.7.) In determining whether to enforce such a contractual choice of law provision, a District Court sitting in diversity applies principles adopted by its forum state. *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 388 (S.D.N.Y. 2001). Such choice of law provisions are presumptively enforceable under New York General Obligations Law §5-1401, and New York thus provides the substantive law applicable to the Counterclaim.[5]

## POINT ONE

### BORROWER HAS FAILED TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Borrower cannot state a claim for the breach of the covenant of good faith and fair dealing by creating new contractual rights that do not exist, were not bargained for and would ultimately contradict the contract.[6] Likewise, Borrower cannot show that it was denied any of the "fruits" of the contract because it had no contractual right to sell the Aircraft at all.

---

[5] In general, a choice of law clause may be invalidated only where it is shown that it was specifically procured as a result of fraud or conflicts with the public policy of New York, *Sun Forest Corp.*, 152 F. Supp. 2d at 388-389, and no such allegations are present here.

[6] While New York law governs the analysis of this claim, it would also fail under West Virginia law, because breach of the implied covenant of good faith and fair dealing is recognized under that state's law only if the counterclaimant also asserts a claim for breach of contract. *See Huntington Nat'l Bank v. Hard Rock Expl., Inc.*, No. 16-CV-48, 2017 WL 2129306, at *3 (N.D. W.Va. May 16, 2017). In this case, Borrower has not alleged any breach of contract and, as such, West Virginia law bars it from asserting a breach of the covenant of good faith and fair dealing. *Id.* Furthermore, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those [expressly] set out in the contract." *Barn–Chestnut, Inc. v. CFM Dev. Corp.*, 193 W.Va. 565 (1995).

A.  **Borrower Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing by Adding Terms Not Included in the Contract**

An implied covenant of good faith and fair dealing inheres in every New York contract. *Coca-Cola N. Am. v. Crawley Juice, Inc.*, No. 09-CV-3259, 2011 WL 1882845, at *9 (E.D.N.Y. May 17, 2011) (recognizing the existence of implied covenant of good faith and fair dealing but granting plaintiff's motion to dismiss defendant's counterclaim). However, the scope of potential liability for breach of the covenant is quite narrow; such a breach cannot give rise to liability if it merely replicates the liability for breach of the underlying contract nor can it create new contractual rights or impose additional duties. *Id.* (citations omitted). In other words, the implied covenant of good faith and fair dealing can only impose an obligation consistent with other mutually agreed upon terms in the contract. *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 470 (S.D.N.Y 2013). It cannot add to the contract a substantive provision not included by the parties. *Coca-Cola N. Am.*, 2011 WL 1882845 at *9 (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005)). The court will not "permit an implied covenant to shoehorn into a contract additional terms plaintiffs now wish had been included." *Id.* (citation omitted).

In this case, Borrower attempts to add contradictory, nonexistent terms into the Loan Documents. Specifically, Borrower alleges that the six days between notice to Lender of the first sale offer for $2.2 million, and Lender's consent to such sale amounted to a breach of the covenant of good faith and fair dealing. However, New York law is clear that the covenant of good faith and fair dealing does not allow a party to add new or different terms to a contract, especially when those new or different terms would contradict the clear language of the contract. Even a cursory review of the operative documents at issue—the Loan Agreement and the Forbearance Agreement—(which are attached to and incorporated into the Complaint)—

demonstrates that Lender was under no consent deadlines, much less an expedited deadline shorter than six days.

Additionally, under the Loan Agreement, Lender possesses numerous remedies, all of which are triggered and available under any Event of Default. (Complaint, Ex. A ¶¶ 6, 7.2.) These available remedies are cumulative, and they include doing nothing or keeping the Aircraft "idle." (*Id.*) As such, even if all the facts pled by Borrower are true, Borrower cannot state a claim for breach of the implied covenant of good faith and fair dealing based on a six-day delay in consent because doing so would contradict the express terms of the Loan Agreement.

### B. <u>Borrower Was Not Denied Any "Fruits" of the Contract</u>

Under New York law, the covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Ray Legal Consulting Grp. v. Dijoseph*, 37 F. Supp. 3d 704, 723-724 (S.D.N.Y. 2014) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (internal citations omitted)). Further, although the implied covenant of good faith and fair dealing incorporates any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the agreement, it does not include any obligation that would be inconsistent with the express terms of the contract. *Ray Legal*, 37 F. Supp. 3d at 725-727 (dismissing plaintiff's claim for breach of the covenant of good faith and fair dealing because defendant was acting in its own self-interest consistent with its rights under the contract).

In this case, Borrower has entirely failed to state a claim for breach of the covenant of good faith and fair dealing because it has not asserted (and cannot assert) any facts that would support a reasonable expectation that Lender was obligated to provide immediate consent to the first sale offer that Borrower obtained, when Lender possessed the express right to keep the

Aircraft idle (among other remedies). *See Ray Legal*, 37 F. Supp. 3d at 726 (holding that plaintiff could not impose an obligation on defendant that was "nowhere in, and was not contemplated by" the parties' contract in order to state a claim against [defendant] for breach of the covenant of good faith and fair dealing). Accordingly, even if all of the facts in Borrower's Counterclaim are true (and they are not), the operative documents completely refute Borrower's contention that Lender had an obligation to provide consent to a sale within a certain time period. Maximizing the resale value or expediting resale was simply not among the "fruits" of any relevant contract. Indeed, Borrower was explicitly precluded from selling the Aircraft at all by the terms of the Loan Agreement, and Lender agreed to consider such a sale as an accommodation to Borrower to mitigate damages, but was always focused on recovering the deficiency. (Complaint, Ex. A ¶ 4.4.)

### POINT TWO

### BORROWER'S COUNTERCLAIM IS BARRED UNDER THE DOCTRINE OF WAIVER

Even if Borrower could state a claim, it previously waived such claim in the Loan Documents. Where "documentary evidence that is vital to any of the allegations made in the complaint" conflicts with those allegations, "the relevant terms of the attached document are controlling." *Sands Brothers*, 1997 WL 626547, at *3. Thus, if plaintiff's allegations contradict the document itself, the provisions of the document control the court's interpretation. *Id.*; *see also Interpharm*, 655 F.3d at 143 (affirming dismissal of complaint where agreement contradicted plaintiff's allegations). In this case, the relevant terms of the Loan Documents defeat Borrower's unfounded conclusory allegations.

The Loan Agreement provides that "[t]o the extent permitted by applicable law, Borrower waives all claims, damages and demands against Lender arising out of the

repossession, retention, sale or other disposition of the Collateral." (Complaint, Ex. A ¶ 7.2.) Moreover, the Forbearance Agreement also provides that Borrower:

> [H]ereby forever releases Lender and its successors, assigns, parents, subsidiaries, affiliates, officers, employees, directors, agents and attorneys (collectively, the "Releasees") from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of actions (whether at law or in equity) and obligations of every nature whatsoever. . . .

(Complaint, Ex. E ¶ 10.) Accordingly, based on this clear documentary evidence, Borrower waived any right to a counterclaim related to the sale of the Aircraft.

Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Interpharm*, 655 F. 3d at 142 (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011)). If "the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties." *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 (quotations omitted). A release should never be converted into a starting point for litigation except under circumstances and under rules which would render any other result a grave injustice. *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 (internal quotation and citation omitted). "A release may be invalidated, however, for any of the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake." *Id.* (citation omitted).

In this case, Borrower expressly released any claims, including the Counterclaim, related to the sale of the Aircraft. Because this release is valid and enforceable under New York law, Borrower's Counterclaim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Justice Aviation, LLC's Counterclaim should be dismissed with prejudice and Plaintiff Citizens Asset Finance, Inc. should be granted such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 1, 2017

Respectfully submitted,

VEDDER PRICE P.C.

By: s/ Daniel C. Green
 Daniel C. Green
 dgreen@vedderprice.com
 1633 Broadway, 31st Floor
 New York, New York 10019
 T: +1 212 407 7700
 F: +1 212 407 7799

 Douglas J. Lipke
  (admitted *pro hac vice*)
 William W. Thorsness
  (admitted *pro hac vice*)
 222 North LaSalle Street, Suite 2600
 Chicago, Illinois 60601
 T: +1 312 609 7500
 F: +1 312 609 5005

 *Attorneys for Plaintiff*
 *Citizens Asset Finance, Inc.*