UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIZENS ASSET FINANCE, INC.,<br><br>               Plaintiff,<br><br>-against-<br><br>JUSTICE AVIATION, LLC, JAMES C. JUSTICE, II and JAMES C. JUSTICE COMPANIES, INC.<br><br>               Defendants. | Case No. 1:17-cv-07115 AJN |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

Defendant Justice Aviation, LLC, ("Justice") submits this response in opposition to Plaintiff's Motion to Dismiss Counterclaim (DN 31). The Counterclaim states an actionable claim against Plaintiff Citizens Asset Finance, Inc. ("Citizens") and should not be dismissed.

**PRELIMINARY STATEMENT**

The question presented by Plaintiff's motion is narrow: does the Counterclaim state a cause of action for breach of the duty of good faith and fair dealing against Citizens? As set forth in detail below, it does and, as such, should not be dismissed.

**RELEVANT FACTS**

The facts underlying Justice's Counterclaim are not complicated. Justice, in an attempt to reduce its indebtedness to Citizens, sought to effectuate a sale of a helicopter that served as collateral on its loan. The proceeds of that $2.2 million sale would then be used to make a substantial payment to Citizens. (Counterclaim, numerical para. 11).

The Loan Agreement prevented Justice from selling the helicopter unless Citizens consented to the sale. (*Id.* at para. 9). In compliance with the language and spirit of the Loan

1

Agreement, when Justice was presented with a written purchase offer for $2.2 million, it notified Citizens on July 6, 2017 of the opportunity and requested permission to sell the aircraft. (*Id.* at para. 13). Citizens took until July 12, 2017 to convey its consent to the sale of the helicopter. (*Id.* at para. 17). As a result of Citizens' delay in consenting to the sale of the helicopter, the offeror rescinded his offer and decided to purchase another aircraft. (*Id.* at para. 18). Justice lost out on a $2.2 million sale, the proceeds of which would have substantially reduced the very indebtedness that is the subject of Citizens' claim in this lawsuit.

Citizens' failure to consent to the sale in a timely manner was unreasonable.[1] (*Id.* at para. 21, 22). The secondary market for helicopters is fast-moving and Justice had made multiple requests for Citizens' consent. (*Id.* at para. 12). On the other hand, Citizens was able to address other issues raised by Justice during the six-day period. (*Id.* at para. 15).

While Justice was eventually able to sell the helicopter to another interested purchaser, that sale was for a total of $2.1 million—$100,000 less than the original offer Justice had received. Justice was damaged as a result of Citizens' failure to reasonably consent to the $2.2 million sale of the helicopter. (*Id.* at para. 20, 22).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 788 F.3d 509, 514 (2d Cir. 2013)(*citing, Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "The plausibility standard is not akin to a probability requirement." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Rather, this means the factual allegations should be "enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554 (2007).

---

[1] It is undisputed that the $2.2 million offer was sufficient. First, Citizens actually (though untimely) consented to the sale for this amount. Additionally, Citizens subsequently consented to a sale of the helicopter for $2.1 million -- $100,000 less than the original offer.

At this stage, the Court should not "assay the weight of the evidence which might be offered in support thereof." *Hogan*, 788 F.3d at 514. Indeed, a well-plead complaint should not be dismissed "even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that recovery is very remote and unlikely." *Id.* As such, the Court must accept as true all factual allegations contained in the counterclaim and draw all inferences in Justice's favor. *Vasquez v. Empress Ambulance Service, Inc.*, 835 F.3d 267 (2d Cir. 2016)(*citing, Littlejohn v. City of New York,* 795 F.3d 297, 306 (2d Cir. 2015)). The "duty of the court is merely to assess the legal feasibility of the complaint." *Hogan v. Fischer*, 788 F.3d 509, 514 (2d Cir. 2013)(*citing, Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Justice's Counterclaim sets forth particularized facts supporting a cause of action for breach of the duty of good faith and fair dealing which, if proven, would entitled Justice to relief. The Counterclaim should not be dismissed.

## ARGUMENT

### I. The Counterclaim Properly Pleads Citizens' Breach of the Duty of Good Faith and Fair Dealing.

#### A. The duty of good faith and fair dealing required Citizens to respond to purchase offers within a reasonable period, which Citizens failed to do.

Citizens acknowledges that it owes a duty of good faith and fair dealing to Justice by virtue of their contractual agreements with one another. Indeed, in New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496 (N.Y. 2002).

Citizens argues that that Justice's claim for breach of the duty of good faith and fair dealing should be dismissed because it "attempts to add contradictory, nonexistent terms" to the loan documents. This is not correct.

The counterclaim for breach of the duty of good faith and fair dealing does not seek to introduce a "contradictory" term. Justice has pleaded that Citizens had a duty to promptly respond to whether it would consent to the sale of the Justice helicopter. (Counterclaim, para. 22). The Loan Agreement requires that Justice seek Citizens' approval before effectuating a sale of the helicopter. It is consistent with the Loan Agreement to infer a duty upon Citizens to consider any such request in good faith and to make a timely response. Such a duty is not "contradictory" to the loan documents, as Plaintiff itself admits that neither the Loan Agreement nor the Forbearance Agreement provides express "consent deadlines." (DN 32, p. 8-9).

The fact that the contract was silent as to a timeframe for Citizens to respond with its consent to a sale does not prevent Justice from establishing a claim for breach of the duty of good faith and fair dealing. This claim arises where there is no express term and one must be implied. This is established by the very case law cited by Plaintiff, which recognizes that the "breach cannot give rise to liability if it merely replicates the liability for breach of the underlying contract . . . ." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, 2011 WL 1882845, *9 (E.D.N.Y. May 17, 2011). The duties of good faith and fair dealing "encompass any promises which a reasonable person in the position of the promise would be justified in understanding were included." *511 West 232nd Owners Corp,* 773 N.E.2d at 500-01. In New York, the law has long recognized that "when an agreement sets no time within which a demand for performance must be made, the law will imply that it must be made within a reasonable time after the event out of which the right to make the demand arises." *Valley Nat. Bank of Long Island v. Babylon Chrysler-Plymouth, Inc.*, 280 N.Y.S.2d 786 (N.Y. App. Div. 1967).

In fact, a frequent basis for claims of breach of the duty of good faith and fair dealing claims is whether a party took action within a "reasonable" time where no specific timeframe

4

was provided for in the contract. In *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 144 (N.Y. 2002), plaintiffs' claims alleging breach of an implied promise to sell all unsold units in a co-op building with a reasonable time were found to be sufficient to withstand defendant's motion to dismiss. Likewise, in *Gutierrez v. Government Employees Insurance Co.*, 136 A.D.3d 975 (N.Y. App. Div. 2016), plaintiff alleged his insurance company had breached its duty of good faith and fair dealing by unreasonably withholding payment of supplementary uninsured/underinsured motorist coverage. The Court found that a cause of action could be maintained for consequential damages suffered as a result of the insurance company's alleged failure to pay its insureds claim within a reasonable time. *Id.* at 976-77.

The issue of reasonableness is "ordinarily a question of fact . . .." *Marinello v. Dryden Mut. Ins. Co. Inc.*, 237 A.D.2d 795 (N.Y. App. Div. 1997). At the motion to dismiss phase, the Court should not attempt to resolve this factual issue, but instead look at the sufficiency of the pleadings, i.e. whether Justice has plead any set of facts which *could* serve to establish that the time Citizens took to provides its consent was unreasonable under the circumstances. Justice has plead facts that support the proposition that the "reasonable" period within which to provide consent to the purchase offer it received was relatively short. This is because "[t]he secondary market for helicopters is fluid and fast moving, with aircraft becoming available regularly and decisions about purchases made quickly." (Counterclaim, para. 12). Within the six day period, Justice made multiple requests for consent and the potential purchaser, in fact, purchased another aircraft. (*Id.* at para. 16, 18). Ultimately, Citizens actually consented to the sale, but by this time, it was too late – the purchaser had moved on.

The fact that Citizens may have possessed "numerous remedies" under the Loan Agreement does not relieve it of its duty to act in good faith and deal fairly. "Where the contract

5

contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Lonner v. Simon Property Group, Inc.*, 57 A.D.3d 100 (N.Y. App. Div. 2008). While Citizens was not required to consent to the sale, it had to act rationally and in good faith in considering and responding to purchase offers actually received. It breached this duty by failing to respond in a timely manner, resulting in the loss of an acceptable sale.

### B. Justice was denied rights and benefits owed to it

The duty of good faith and fair dealing prohibits either party to a contract from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dweck Law Firm, L.L.P. v. Mann*, 340 F.Supp.2d 353, 358 (S.D.N.Y. 2004). This includes a duty upon parties not to "frustrate the contracts into which they have entered." *Id.*

Justice has pleaded facts which support that Citizens was frustrating its ability to perform under the Loan Agreement and Forbearance Agreement. Citizens has argued in this lawsuit that it is entitled to receive money from Justice. Justice attempted to sell its helicopter to fund a substantial, multi-million dollar payment to Citizens. (Counterclaim, para. 11). Despite Justice's best efforts to close the sale, however, Citizens' failure to give its consent to the transaction caused the deal to fall apart, depriving Justice of this source of funds and frustrating its ability to make payments to Citizens. (*Id.* at para. 17-18). While ultimately Justice was able to sell the helicopter to another purchaser, the purchase price was $100,000.00 less. (*Id.* at 19-20). This materially reduced the amount of the payment Justice could make to Citizens. Citizens ignores its role in this loss, however, and continues to seek repayment of amounts including the

6

$100,000.00 that Justice should have been able to fund through the sale of the helicopter but for Citizens failure to timely consent to the sale!

**II. Justice Did Not Waive Its Claim for Breach of the Duty of Good Faith and Fair Dealing**

New York disfavors general releases attempting to waive any and all claims arising in the future. *See, e.g.*, *Rigney v. Ichabod Crane Cent. School Dist.*, 59 A.D.3d 842 (N.Y. App. Div. 2009)("Releases that merely waive any and all claims arising in the future cannot be enforced because they fail to advise the signor that the waiver extends to claims that might arise from the defendant's own negligence."). As such, it has long been the law in New York that "demands originating at the time a general release is given or subsequently, and demands subsequently maturing, are not discharged by the release unless expressly embraced therein or falling within a fair import of the terms implied." *Farnham v. Farnham*, 204 A.D. 573, 574 (N.Y. App. Div. 1923); *Murray-Gardner Management, Inc. v. Iroquois Gas Transmission System, L.P.*, 229 A.D.2d 852 (N.Y. App. Div. 1996). The Loan Agreement, which purports to have been entered into on December 30, 2009, does not expressly state that the parties are waiving "future" claims. Absent this express provision, the Loan Agreement does not operate to waive claims based on actions or omissions taking place years later.

Further, Citizens materially misrepresents the substance of the release set forth in the Forbearance Agreement, selectively truncating its citation to avoid language that expressly provides that the release applies only to claims arising from actions or omissions occurring **prior to the effective date of the Forbearance Agreement**. Paragraph 10(a) provides, in full,

> (a) In further consideration of Lender's execution of this Agreement, each Forbearance Party, individually and on behalf of such Forbearance Party's successors (including without limitation, any trustees acting on behalf of such Forbearance Party and any debtor-in-possession with respect to such Forbearance Party), assigns, subsidiaries and affiliates (collectively, the "Releasors"), hereby

7

> forever releases Lender and its successors, assigns, parents, subsidiaries, affiliates, officers, employees, directors, agents and attorneys (collectively, the <u>"Releasees"</u>) from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of actions (whether at law or in equity) and obligations of every nature whatsoever, whether liquidated or unliquidated, whether known or unknown, matured or unmatured, fixed or contingent (collectively, <u>"Claims"</u>) that Releasors may have against the Releasees which arise from or relate to any actions which the Relesees may have taken or omitted to take **prior to the date of this Agreement was executed**, including, without limitation, with respect to the Obligations, any Collateral, the Loan Documents, or any third parties liable in whole or in part for the Obligations. The provision shall survive and continue in full force and effect whether or not (i) any Forbearance Party shall satisfy all other provisions of this Agreement or the Loan Documents, including payment in full of all Obligations, (ii) this Agreement otherwise is terminated, or (iiii) the forbearance of Lender ceases pursuant to this Agreement.

(Underlining in original; bolding added for emphasis).

The Forbearance Agreement has an "effective" date of January 11, 2017. The Counterclaim is clear that the acts or omissions of Citizens that underlie Justice's claim for breach of good faith and fair dealing occurred beginning on July 6, 2017–months after the effective date of the Forbearance Agreement. By its express terms, the Forbearance Agreement would not operate to waive or release the claim set forth in the Counterclaim.

*Centro Empresarial Cempresa, S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011), to which Citizens cites, is distinguishable. In *Centro*, the parties' release expressly indicated that it included "past, present, or future" claims. There is no language in either the Loan Agreement or Forbearance Agreement documents specifically indicating the parties' intention to release "future" claims. Furthermore, in *Centro*, the plaintiffs were attempting to pursue an "unknown fraud claim" after signing the release, alleging that they had been induced to sell their interests in a company based on defendant's information regarding the company's value. In other words, the act giving rise to the fraud claim had already been accomplished as of the date the plaintiffs signed the releases. In the present matter, however, the acts or omissions

8

giving rise to Justice's counterclaim did not occur until months **after** the Forbearance Agreement was executed.

There is no express provision for waiver of "future" claims in either of the parties' agreements. To the contrary, the Forbearance Agreement specifically limits the scope of the release contained therein to claims based on acts and omissions which occurred prior to the agreement's effective date. Neither the language in the Loan Agreement or the Forbearance Agreement operates to waive any claim based on acts and omissions that did not occur until a substantial period after the execution of these documents.

## CONCLUSION

For all of the foregoing reasons, Justice respectfully requests that the Court **DENY** Plaintiff Citizens Asset Finance's Motion to Dismiss Counterclaim.

Dated: Louisville, Kentucky
December 15, 2017

Respectfully submitted,

/s/ Laurence J Zielke
Laurence J. Zielke
John H. Dwyer, Jr.
Zielke Law Firm, PLLC
462 S. Fourth Street, Suite 1250
Louisville, KY 40202
(502) 589-4600 / (502) 584-0422
lzielke@zielkefirm.com
jdwyer@zielkefirm.com
*Counsel for Defendants Justice Aviation, LLC, James C. Justice, II and James C. Justice Companies, Inc.*

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing has been served through the Court's electronic filing system, on December 15, 2017, to the following:

Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, NY 10019

Douglas J. Lipke
William W. Thorsness
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601

/s/ John H. Dwyer, Jr.
John H. Dwyer, Jr.